*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILLIAMS-BLAIR/CROSS, Minors.

UNPUBLISHED
April 14, 2022

No. 358173
Calhoun Circuit Court
Family Division
LC No. 2020-000878-NA

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Appellant Kendall Blair appeals by right the trial court's order that denied his motion to intervene in a child protective proceeding and that also denied his request for paternity testing and to revoke the paternity of the minor children's legal father, Myron Sims, under the Revocation of Paternity Act (RPA), MCL 722.1431 *et seq*. We affirm.

Lakesha Sims was the mother of five minor children, and the trial court took jurisdiction over those children in a child protective proceeding that was commenced in March of 2020. The children were born in 2008, 2010, 2012, 2014, and 2018. The Department of Health and Human Services (DHHS) eventually sought to terminate the parental rights of Lakesha Sims. The trial court subsequently terminated her parental rights, and this Court affirmed the termination ruling. *In re Williams-Blair/Cross*, unpublished per curiam opinion of the Court of Appeals, issued April __, 2022 (Docket No. 358261). Lakesha and Myron Sims had married in 2002, and although the relationship ended before any of the five children were conceived and born, the couple never obtained a judgment of divorce. Myron Sims denied that he was the biological father of any of the children.

In the protective proceeding, Blair was initially listed as the father of four of the children. Lakesha Sims reported that Blair is the biological father of those children and that Robert Cross, who apparently was never located, is the biological father of the fifth child. Back in 2012, default support and filiation orders had been entered recognizing Blair as the legal father of three of the children—the two youngest children had not yet been born. The two orders were predicated on

-1-

affidavits or acknowledgements of parentage[1] executed by Blair and Lakesha Sims. Again, the relationship between Lakesha and Myron Sims had ended long before the 2012 orders were entered, but they remained married, which at first was unknown to DHHS. Once it was discovered during the child protective proceeding that Myron and Lakesha Sims were still married, the trial court in June 2020 vacated the two 2012 orders and revoked the affidavits of parentage. At that time, Blair expressed that he had no objection to vacating the 2012 orders. The case then proceeded with Myron Sims being treated as the legal father of all five children, and his parental rights to the children were terminated. Blair was no longer a party to the proceeding.

In October 2020, Blair filed a separate action for paternity under the RPA with respect to the four children who he claimed were his biological offspring. In the suit, he sought to revoke the paternity of Myron Sims relative to the children. But Blair never named Myron Sims as a party, and, according to the trial court, the case was dismissed for that reason. Later, in the child protective proceeding, Blair moved to intervene in the proceeding, moved to obtain paternity testing, and moved to revoke the paternity of Myron Sims under the RPA. In its ruling, the trial court initially spoke of the untimeliness of Blair's motions, noting that he had waited until after the Sims's parental rights had been terminated. The court further found that Blair did not act within the RPA's three-year time limit in relation to the children's dates of birth. The trial court also determined that it was not in the children's best interests to revoke paternity under the RPA. Accordingly, the trial court denied Blair's motions. Blair now appeals the trial court's ruling.

On appeal, Blair first contends that he had standing to bring an action or motion under the RPA. Blair asserts that at the time of conception relative to the four children, he was wholly unaware of the marriage between Myron and Lakesha Sims. Blair further maintains that he and Lakesha Sims openly acknowledged that Blair is the biological father of the children. With respect to the fact that Blair did not pursue revocation of paternity within three years of the children's births as mandated by the RPA, he argues that it was because the 2012 orders had already provided that he was the legal father of the children; consequently, from his perspective, there was no person's paternity to revoke. Blair's final argument is that his parental rights were terminated absent establishment of a statutory ground for termination and without proof that termination was in the children's best interests.

For purposes of the RPA, we review for clear error any underlying factual findings made by the trial court, and we review de novo issues concerning the interpretation and application of the RPA. *Parks v Parks*, 304 Mich App 232, 237; 850 NW2d 595 (2014). A trial court commits clear error when this Court is definitely and firmly convinced that a mistake was made. *Id.* The *Parks* panel further observed:

> When interpreting a statute, a court must give effect [to] the Legislature's intent. We first look to the language of the statute itself in determining the Legislature's intent. This Court gives the words of the statutes their plain and ordinary meaning and will look outside the statutory language only if it is ambiguous. Where that language is unambiguous, we presume that the Legislature

---

[1] We shall use the terms "acknowledgement" of parentage and "affidavit" of parentage interchangeably.

intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. [*Id.* at 237-238 (quotation marks, citations, and brackets omitted).]

Initially, we voice some concerns regarding the trial court's action in June 2020 to vacate the 2012 support and filiation orders that recognized Blair as the legal father of the three children born to Lakesha Sims up to that point in time. The ruling effectively revoked or set aside the order of filiation and the affidavits of parentage. Given the discovery that Myron Sims remained married to Lakesha Sims, we understand the reason why the court believed that the revocations were necessary. A " '[p]resumed father' means a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433. Myron Sims was the presumed father of all the children. But the RPA contains provisions with respect to setting aside acknowledgments of parentage, MCL 722.1435(1); MCL 722.1437, and setting aside orders of filiation, MCL 722.1435(3); MCL 722.1439. And we question whether the criteria in those statutory provisions were satisfied when in 2020 the trial court vacated the 2012 orders and acknowledgements.[2] That said, Blair had no objection to the 2020 order vacating the 2012 orders and affidavits of parentage establishing his paternity. Moreover, he did not appeal the vacation order, nor does he raise in this appeal any argument that the 2020 order was legally invalid. Accordingly, we now proceed on the basis that Myron Sims was the children's presumed legal father and that Blair had to establish that Myron was not their father under the requirements of the RPA.[3]

The RPA provides that MCL 722.1441 applies when an action is brought "to determine that a presumed father is not a child's father." MCL 722.1435(4). MCL 722.1441 provides in pertinent part:

(3) If a child has a presumed father, a court may determine that the child is born out of wedlock for the purpose of establishing the child's paternity if an action[4] is filed by an alleged father[5] and any of the following applies:

---

[2] For example, the 2020 litigation to vacate the 2012 acknowledgments of parentage was not filed within three years of the births of the three children covered by the acknowledgments. MCL 722.1437(1). A similar three-year provision applies to setting aside an order of filiation. MCL 722.1439(2).

[3] We do note that, to the best of our knowledge, the one child claimed by Blair who was born in 2018 was not the subject of either a filiation order or an acknowledgement of parentage.

[4] "An action under this section may be brought by a complaint filed in an original action or by a motion filed in an existing action, as appropriate under this act and rules adopted by the supreme court." MCL 722.1441(5).

[5] An " '[a]lleged father' means a man who by his actions could have fathered the child." MCL 722.1433(c).

(a) All of the following apply:

(*i*) The alleged father did not know or have reason to know that the mother was married at the time of conception.

(*ii*) The presumed father, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child.

(*iii*) *The action is filed within 3 years after the child's birth*. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act.[6]

(*iv*) Either the court determines the child's paternity or the child's paternity will be established under the law of this state or another jurisdiction if the child is determined to be born out of wedlock. [Emphasis added.]

The trial court found that Blair's motions were not filed within three years of the births of the four children at issue. See MCL 722.1441(3)(a)(*iii*). On appeal, Blair provides a somewhat rational reason for not doing so, at least in regard to the three oldest children. There were acknowledgements of parentage and court orders recognizing Blair as the legal father. MCL 722.1441(3)(a)(*iii*), however, does not provide for an exception under such circumstances. Ultimately, we do not find it necessary to further explore or resolve Blair's argument regarding the three-year provision found in MCL 722.1441(3)(a)(*iii*). The trial court, in denying Blair's motions, relied more heavily on MCL 722.1443(4), which provides:

A court may refuse to enter an order setting aside a paternity determination, revoking an acknowledgment of parentage, determining that a genetic father is not a child's father, or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child. The court shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:

\* \* \*

(d) The nature of the relationship between the child and the presumed or alleged father.

(e) The age of the child.

(f) The harm that may result to the child.

---

[6] The RPA was enacted and became effective in 2012. 2012 PA 159.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider.

In this case, the trial court determined that it would not be in the best interests of the four children to rule in favor of Blair and find that they were born out of wedlock. The trial court recounted the extensive history of physical abuse Blair committed against Lakesha Sims which was often witnessed by the children and which caused the children to suffer severe psychological harm and emotional trauma. Lakesha Sims lost her vision in one eye after one physical assault by Blair. A more recent attack involved Blair's choking Lakesha unconscious. There were regular horrific beatings encompassing a nearly 15-year period. We conclude that there was no error by the trial court in denying Blair's motions under MCL 722.1443(4).[7]

We affirm.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto

---

[7] We do not understand the logic in Blair's argument that his parental rights were terminated absent establishment of a statutory ground for termination and without proof that termination was in the children's best interests. Blair's so-called "parental" rights were not terminated under MCL 712A.19b, which had no application to this matter. Rather, the trial court simply refused to recognize Blair as the children's legal father—there were no parental rights to terminate.